## EX PARTE W. C. WALTERS.

[64 South. 2.]

1. EXTRADITION. *Duty of governor. Proceedings. Proof of charge. Issuance of warrant. Effect. Habeas corpus. Purpose of writ. Defenses. Conflicting evidence of guilt.*
   The interstate extradition of criminals is governed by the laws of the United States and under the provisions of Revised Statutes of United States, section 5278 (U. S. Comp. St. 1901, page 3597) enacted pursuant to Constitution of United States, article 4, section 2, clause 2, it is the duty of the executive of the state where the fugitive is found to cause him to be arrested, surrendered, and delivered to the appointed agent of the demanding state to be taken to that state.

2. SAME.
   It is incumbent upon the executive of the state to which the accused has fled to assure himself that the accused is a fugitive from justice. He may insist on proof but the character of such proof is not prescribed and he may rely upon the registration and accompanying papers or on an independent inquiry in determining the fact that the accused is such fugitive.

3. EXTRADITION. *Issuance of warrant. Effect.*
   The issuance of a warrant by the executive of the state to which the accused has fled makes a *prima facie* case in favor of the demanding state.

4. SAME.

    While a *prima facie* case is made in favor of extradition, still *habeas corpus* proceedings may be resorted to for the purpose of determining whether the accused is subject to be returned to the demanding state as a fugitive from justice.

5. EXTRADITION. *Defenses. Conflicting evidence of guilt.*

    The fact that the evidence is conflicting as to whether the accused was present in the state demanding the extradition at the time the crime was committed is not ground for refusing extradition and discharging accused on *habeas corpus.*

6. EXTRADITION. *Defenses.*

    It is no defense to a proceeding for extradition, that the accused is held in this state for a criminal offense where before the hearing of the writ of *habeas corpus* for his release the charge pending against accused in this state is dismissed.

APPEAL from the circuit court of Pearl River county. HON. A. E WEATHERBY, Judge.

*Habeas corpus* by W. C. Walters. From a judgment dismissing the petition and ordering the relator into custody he appeals.

The facts are fully stated in the opinion of the court.

*Dale & Rawles,* attorneys for appellant.

*Geo. H. Ethridge,* assistant attorney-general, for the state.

The record has been lost in this case.

REED, J., delivered the opinion of the court.

This is an appeal from the judgment of the circuit court of Marion county denying the relief prayed for by relator, William C. Walters, dismissing his *habeas corpus* petition, and ordering him delivered to the authorized agent of the state of Louisiana to be conveyed to that state to answer the charge of kidnapping.

On April 22, 1913, an affidavit was made in the court of the city judge of Opelousas, in the parish of St. Landry, and state of Louisiana, charging William C. Walters

with kidnapping Robert Dunbar, Jr., a boy five years of age. The offense was alleged to have been committed on August 23, 1912. A warrant of arrest was immediately issued by the city judge, and on the same day application for requisition was made to the governor of Louisiana. On April 23, 1913, the governor of Louisiana issued his requisition to the governor of Mississippi. Therein the charge against relator is shown, and it is alleged that he has fled from the state of Louisiana and taken refuge in the state of Mississippi, and demand is made that he be apprehended and delivered to the authorized agent of Louisiana. On June 8, 1913, the governor of Mississippi, in response to the requisition upon him by the governor of Louisiana, issued a warrant for the arrest of relator and his delivery into the custody of the agent of the state of Louisiana.

All of the papers above referred to are fully presented in the record. They are regular in form and sufficient.

In his petition for writ of *habeas corpus,* filed June 18, 1913, relator alleged that he had not violated any criminal law of the state of Louisiana, was not in the state at the time when the offense was charged to have been committed, was not a fugitive from justice of that state, and was unlawfully imprisoned and restrained of his liberty. He also alleged that there was then pending against him in Marion county, Mississippi, an affidavit charging him with the offense of kidnapping in the state of Mississippi, and that he was not subject to be returned to the state of Louisiana for trial because he was being held to answer for the alleged violation of the criminal laws of Mississippi. The agent of the state of Louisiana, replying to the writ of *habeas corpus,* denied the right of relator to the writ, and presented with his reply all the proceedings leading up to the issuance of the warrant as herein referred to. Thereupon relator filed a rejoinder to the reply of the agent of Louisiana in which he alleged that the governor of Mississippi did not pass

"upon the question of whether or not W. C. Walters was, at the time of the commission of the offense alleged, present in the state of Louisiana and afterwards fled from the state of Louisiana," and he filed with his rejoinder a copy of a paper which he claims is a written opinion of the governor of Mississippi. The case then proceeded to trial, and relator introduced a number of witnesses whose testimony showed that he was in Mississippi on and about the time when the kidnapping was charged to have taken place in Louisiana. Testimony introduced by the agent of Louisiana, the demanding state, showed that relator, W. C. Walters, was in Louisiana on and about the time when the child was kidnapped, and that he was seen near the place where the child disappeared on the 24th of August, 1912, being the next day after the disappearance.

The interstate extradition of criminals is governed by the laws of the United States. The Federal Constitution and statutes must be looked to for authority in extradition matters. Clause 2 of section 2 of article 4 of the Constitution of the United States reads: "A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall on demand of the executive authority of the state from which he fled, be delivered up to be removed to the state having jurisdiction of the crime." Following this constitutional provision is section 5278 of the Federal Revised Statutes (U. S. Comp. St. 1901, 3597), which is as follows: "Whenever the executive authority of any state or territory demands any person as a fugitive from justice, of the executive authority of any state or territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any state or territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the state or territory from whence the

person so charged has fled, it shall be the duty of the executive authority of the state or territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within six months from the time of the arrest, the prisoner may be discharged. All costs or expenses incurred in the apprehending, securing, and transmitting such fugitive to the state or territory making such demand, shall be paid by such state or territory.''

The state can prescribe proceedings and provide adequate means and facilities for the purpose of carrying into effect extraditions. This is done by the state of Mississippi by section 2378 of the Code of 1906, which reads: ''It shall be the duty of the governor, on demand made by the executive authority of any other state, territory, or district, for any person charged, on affidavit or indictment, in such other state, territory, or district, with a criminal offense, and who shall have fled from justice, and be found in this state, the demand being accompanied with a copy of the affidavit or indictment, certified as authentic by such executive authority, to cause the offender to be arrested and delivered up to the authority of such state, territory or district, for removal to the jurisdiction having cognizance of the offense, upon payment of the costs and expenses consequent on arrest; and it shall be the duty of the governor to demand and receive fugitives from justice for offenses committed in this state.''

It will be seen that the affidavit charging relator with the crime of kidnapping, duly authenticated by the executive authority of Louisiana, and, in truth, all papers leading up to the requisition, accompanied the demand for the extradition of W. C. Walters. It is the purpose of

the Federal and state statutes to provide a means for bringing back to the state where the crime has been committed a person charged with such crime, who has fled from justice, to be there dealt with according to law.

When the executive authority of the state where the law has been violated makes a demand in accordance with the statutes upon the executive of the state into which the offender has fled, as has been done in the case at bar, it becomes, under the Federal Constitution and laws, "the duty of the executive of the state where the fugitive is found to cause him to be arrested, surrendered, and delivered to the appointed agent of the demanding state to be taken to that state." *People ex rel. McNichols* v. *Pease,* 207 U. S. 100, 28 Sup. Ct. 58, 52 L. Ed. 121.

However, it is incumbent upon the executive to assure himself that the accused is a fugitive from justice. He may insist upon proof, but the character of such proof is not prescribed. The responsibility of ascertaining in some legal manner whether the accused is a fugitive from justice of the demanding state rests upon him. *Ex parte Reggel,* 114 U. S. 642, 5 Sup. Ct. 1148, 29 L. Ed. 250.

We take the following from the case of *McNichols* v. *Pease, supra*: "Nevertheless, the executive upon whom such demand is made, not being authorized by the Constitution and laws of the United States to cause the arrest of one charged with crime in another state unless he is a fugitive from justice, may decline to issue an extradition warrant, unless it is made to appear to him, by competent proof, that the accused is substantially charged with crime against the laws of the demanding state and is in fact a fugitive from the justice of that state. Whether the alleged criminal is or not such fugitive from justice may, so far as the Constitution and laws of the United States are concerned, be determined by the executive upon whom the demand is made in such way as he deems satisfactory, and he is not obliged to demand proof, apart

from proper requisition papers from the demanding state, that the accused is a fugitive from justice. If it be determined that the alleged criminal is a fugitive from justice, whether such determination be based upon the requisition and accompanying papers in proper form, or after an original, independent inquiry into the facts, and if a warrant of arrest is issued after such determination, the warrant will be regarded as making a *prima facie* case in favor of the demanding state and as requiring the removal of the alleged criminal to the state in which he stands charged with crime, unless in some appropriate proceeding it is made to appear that he is not a fugitive from the justice of the demanding state.''

We decide in this case that the extradition papers are in proper form and show that relator is substantially charged with crime against the laws of Louisiana, from whose justice he is alleged to have fled. The executive of Mississippi may then have based his determination to issue warrant upon the requisition and accompanying papers, or he may have decided after an original, independent inquiry into the facts. His issuance of the warrant makes a *prima facie* case in favor of the demanding state. *Ex parte Edwards*, 91 Miss. 621, 44 So. 827; *Ex parte Devine*, 74 Miss. 715, 22 So. 3.

While a *prima facie* case is made in favor of extradition, still *habeas corpus* proceedings may be resorted to, for the purpose of determining whether the accused is subject to be returned to the demanding state as a fugitive from justice. This seems fully settled in the case of *McNichols* v. *Pease, supra.* Mr. Justice Harlan, delivering the opinion of the court, stated that certain principles, which he set forth, and from which we have quoted above, are deduced from the cases already decided by the supreme court of the United States, all of which he cited. We quote further from his opinion as follows: ''A proceeding by *habeas corpus* in a court of competent jurisdiction is appropriate for determining whether the ac-

cused is subject, in virtue of the warrant of arrest, to be taken as a fugitive from the justice of the state in which he is found to the state whose laws he is charged with violating. One arrested and held as a fugitive from justice is entitled of right, upon *habeas corpus*, to question the lawfulness of his arrest and imprisonment, showing by competent evidence, as a ground for his release, that he was not, within the meaning of the Constitution and laws of the United States, a fugitive from the justice of the demanding state, and thereby overcoming the presumption to the contrary arising from the face of an extradition warrant.''

The record before us discloses contradictory evidence as to the presence in or absence from Louisiana of W. C. Walters when the crime is alleged to have been committed. We cannot say, therefore, that there was any error by the trial court in sustaining the governor in his issuance of his warrant and in deciding that Walters should be delivered to the authorized agent of the state óf Louisiana. In the case of *Munsey* v. *Clough,* 196 U. S. 364, 25 Sup. Ct. 282, 49 L. Ed. 515, it was decided that: ''Contradictory evidence on the question of the presence or absence of the accused in the state at the time of the commission of the offense will not require his discharge on *habeas corpus* to review the issuance of a warrant of arrest in interstate extradition proceedings.'' Mr. Justice PECKHAM, delivering the opinion of the court, said: ''The court will not discharge a defendant arrested under the governor's warrant where there is merely contradictory evidence on the subject of presence in or absence from the state, as *habeas corpus* is not the proper proceeding to try the question of alibi, or any question as to the guilt or innocence of the accused.''

It is contended by appellant that the writing made Exhibit A to his rejoinder or replication shows that the governor of Mississippi did not pass upon the question of appellant's being a fugitive from justice. The record

does not show that this paper was any part of the governor's decision in the case. Nor do we see that it was any way connected with the warrant issued. It can have no effect in this consideration. The warrant clearly sets forth the information obtained by the governor and his conclusion. We quote therefrom: ''Whereas, his excellency the governor of the state of Louisiana, has made known to me that W. C. Walters stands charged with having committed the crime of kidnapping, in the parish of St. Landry, Louisiana, and whereas it appears that said W. C. Walters has fled from justice, and is to be found in the state of Mississippi, where he has taken refuge.''

The contention by appellant in his petition that he should not be delivered to Louisiana for trial, because he was charged with the same offense in Mississippi and was held in prison therefor, was fully and effectively answered by the dismissal, on motion of the district attorney and county prosecuting attorney, of the charge then pending in Mississippi. A copy of the judgment of the justice of the peace, in whose court the case was pending, dismissing the case and discharging appellant is in the record. It was entered on June 21, 1913, and before the date of the hearing by the circuit court of the *habeas corpus* application. So that, when the case was heard, he was not held in Mississippi for an alleged violation of a criminal law of this state.

*Affirmed.*